**Brandon Keith SHAFFER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–04–483–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 19, 2006.

---

James Rasmussen, Wichita Falls, for appellant.

Barry L. Macha, Crim. Dist. Atty., John W. Brasher and Dobie Kosub, Asst. Crim. Dist. Attys., Wichita Falls, for appellee.

PANEL A: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION ON REHEARING

DIXON W. HOLMAN, Justice.

After reconsidering our prior opinion on Appellant's motion for rehearing, we deny the motion, but withdraw our opinion and judgment dated November 23, 2005, and substitute the following.

Appellant Brandon Keith Shaffer appeals his conviction for possession of certain chemicals, namely pseudoephedrine, with intent to manufacture a controlled substance, namely methamphetamine. After the jury convicted Appellant, he pled true to the enhancement paragraphs that alleged previous convictions for burglary of a building and burglary of a vehicle, and the jury assessed a sentence of fifty years' confinement and a $10,000 fine. The trial court sentenced Appellant accordingly. In his three points, Appellant contends that the evidence was legally and factually insufficient to sustain a conviction for the offense of possession of pseudoephedrine with the intent to manufacture methamphetamine, the trial judge abused his discretion in admitting, over objection, hearsay evidence that the labeling on the packages could serve as proof of the contents of the package, and Texas Health and Safety Code Section 481.124(a)(2) is unconstitutional. We affirm.

## FACTUAL BACKGROUND

On November 21, 2003, Wichita Falls Police Officer Joe Lemond stopped Appel-

lant's vehicle for speeding. Officer Lemond radioed for a records check of Appellant and also requested that a dog handler respond to the scene. Sergeant Joe Snyder arrived at the scene with a dog certified in narcotic detection and began walking the dog around the vehicle. The dog indicated that he detected something inside the vehicle. A search of the inside of the vehicle revealed a partially smoked marihuana cigarette and a bag containing six cans of lighter fluid, eight lithium batteries, and twenty-four bottles of cold medicine containing pseudoephedrine. After finding these items, the officers arrested Appellant, and the grand jury returned an indictment charging him with possession of pseudoephedrine with the intent to manufacture methamphetamine.

The State alleged that Appellant possessed the chemical precursor pseudoephedrine, which was marked as an ingredient on the twenty-four bottles of "Max Brand" cold medicine seized from Appellant's vehicle. At trial, the State offered the two boxes which contained twelve sealed bottles of "Max Brand" cold medicine tablets. The labeling on the bottles identified the cold medicine as containing pseudoephedrine, sixty milligrams. The State relied upon the labeling as proof that the tablets contained pseudoephedrine, and Appellant objected, complaining that the labeling was hearsay. The trial court overruled Appellant's objection and the bottles were admitted into evidence.

## LEGAL AND FACTUAL SUFFICIENCY

In his first point, Appellant asserts that the evidence was legally and factually insufficient because the evidence as to the proof of a chemical precursor and the intent to manufacture methamphetamine was inadequate to sustain Appellant's con-

viction. Appellant contends that the State's failure to offer any scientific or expert testimony identifying the nature of the alleged chemical precursor, pseudoephedrine, relying instead exclusively on the labels on the bottles, resulted in legally and factually insufficient evidence that the substance seized was pseudoephedrine. Additionally, Appellant complains that the evidence is legally and factually insufficient to prove that Appellant had the requisite intent to manufacture a controlled substance.

### 1. Legal Sufficiency Standard of Review

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

■ This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). We must resolve any inconsistencies in the evidence in favor of the verdict.

*Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim.App.2000).

▮ In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review. *Moff v. State,* 131 S.W.3d 485, 489–90 (Tex. Crim.App.2004).

### 2. Factual Sufficiency Standard of Review

▮ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *See Zuniga v. State,* 144 S.W.3d 477, 481 (Tex. Crim.App.2004). The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 484. There are two ways evidence may be factually insufficient: (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. *Id.* at 484–85. "This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt." *Id.* at

485. In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt. *Id.*

▮ In performing a factual sufficiency review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses. *Id.* at 481; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). We may not substitute our judgment for the fact finder's. *Zuniga,* 144 S.W.3d at 482.

▮ A proper factual sufficiency review requires an examination of all the evidence. *Id.* at 484, 486–87. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

### 3. Proof of Chemical Precursor

▮ Appellant complains that the trial court erroneously admitted, over objection, hearsay evidence that the labeling on the packages could serve as proof of the contents of the package. The State asserts that, by conceding to the jury that the substance in question was pseudoephedrine, Appellant is judicially estopped from claiming otherwise on appeal. Alternatively, the State contends that the evidence is legally and factually sufficient to establish that the alleged chemical precursor was in fact pseudoephedrine and that the pseudoephedrine was possessed with the intent to manufacture a controlled substance.

▮ The State cites *Davidson v. State* for the proposition that Appellant is judicially estopped from claiming on appeal that the State failed to prove the substance in question was pseudoephedrine because Appellant conceded that the substance was

in fact pseudoephedrine. *See* 737 S.W.2d 942, 948 (Tex.App.-Amarillo 1987, pet. ref'd). *Davidson* stands for the proposition that a party may use a formal judicial admission made by party opponent as a substitute for evidence if the statement is clear, definite, and unambiguous. *Id.*

In urging that Appellant judicially admitted the substance was pseudoephedrine, the State points to the fact that during closing arguments, defense counsel stated:

Now, naturally some of the elements of the offense we're not going to dispute.... Sergeant Snyder testified that that's the individual they stopped. Element of the offense, that Mr. Shaffer was involved. That this contraband or evidence that they seized whatever you [want to] call it, is pseudoephedrine. Nobody tested it, therefore you're going to have to look at it and make that determination for yourself. I'm not putting that much in issue there.

The State contends that through this statement, Appellant conceded that this substance was in fact pseudoephedrine. We disagree because we do not believe that the statement made during closing arguments was so clear, definite, and unambiguous as to constitute a judicial admission.

■ Appellant contends that the labeling on the "Max Brand" cold medicine bottles was not sufficient to prove that the substance was in fact pseudoephedrine; Appellant asserts that the only type of evidence sufficient to support a conviction for possessing contraband of a chemical nature is expert scientific testimony. To support this contention, Appellant directs us to three cases. The first two cases deal with the necessity of expert testimony in identifying a white, powdery substance as cocaine. *See Bright v. State,* 556 S.W.2d 317, 321–22 (Tex.Crim.App.1977) (disallow-ing a lay witness's testimony that a given substance was heroine on the basis that an experienced narcotics officer could not testify in that regards), *overruled on other grounds, McClenan v. State,* 661 S.W.2d 108 (Tex.Crim.App.1983); *Steele v. State,* 681 S.W.2d 129, 131 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd) (requiring expert testimony to establish that the white, powdery substance was cocaine and if so, to show its weight). We believe the present case is distinguishable from these cited cases, because the cold medication was discovered in its original, sealed packaging.

The final case cited by Appellant lends the greatest support to his argument that the only type of evidence sufficient to support a conviction for possessing a dangerous drug or controlled substance is through the introduction of expert scientific testimony, but the case is distinguishable from the case at bar. *See Manning v. State,* 637 S.W.2d 941 (Tex.Crim.App. 1982). In *Manning,* the court of criminal appeals found the evidence the State presented to establish the substance seized was phenmetrazine, a controlled substance, was insufficient. *Id.* at 942. An officer testified that he found twenty-four pink tablets that he believed to be "Preludin." *Id.* On appeal, the State argued that phenmetrazine hydrochloride is marketed in the United States under the trade name Preludin and is the only source of such tablets listed in the *Physician's Desk Reference,* from which the trial court could properly take judicial notice of the fact. *Id.* at 943. Looking to the record, the court of criminal appeals found no evidence, other than color, showing that the distinctive nature of the tablets matched the description of Preludin, and an examination of the *Physician's Desk Reference* yielded numerous tablets similar to Preludin. *Id.* Therefore, the court of criminal

appeals determined that the State failed to prove by a preponderance of the evidence that the substance possessed was phenmetrazine. *Id.*

We believe the cited cases are distinguishable from the present case because the cold medicine Appellant possessed was contained in sealed packages. Additionally, as discussed below, the labeling on the packages reliably established that the cold medicine contained pseudoephedrine. We hold that this evidence is legally and factually sufficient to prove that Appellant was in possession of the chemical precursor pseudoephedrine.

### 4. Intent to Manufacture

■ Appellant contends that the mere possession of lithium batteries, starter fluid, and the "Max Brand" cold medicine containing pseudoephedrine is insufficient to prove beyond a reasonable doubt Appellant's intent to manufacture methamphetamine. Appellant contends that a person could innocently possess these items without intending to engage in criminal behavior.

■ A person acts with intent with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). Intent can be inferred from the acts, words, and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex. Crim.App.1982).

Police seized twenty-four bottles of cold medicine containing pseudoephedrine, eight lithium batteries, and six cans of starter fluid from Appellant's car. The State called Officer John Spragins, who is specially trained in narcotics investigation, specifically in investigating methamphetamine laboratories, and who teaches law enforcement officers concerning the investigation of methamphetamine laboratories,

to testify regarding the manufacturing of methamphetamine. Officer Spragins testified that the items officers found in Appellant's possession are used to manufacture methamphetamine. He further testified that the particular brand of starter fluid that Appellant possessed was a brand that is preferred by manufacturers of methamphetamine because it contains less oil than other brands.

Additionally, Appellant possessed an amount of cold medication containing pseudoephedrine that is inconsistent with personal use. Police seized two boxes of pseudoephedrine, containing twenty-four bottles. Each bottle contained thirty-six tablets, amounting to a total of 864 tablets. Officer Spragins testified that this quantity of pseudoephedrine was sufficient to manufacture a sizeable amount of methamphetamine.

The trier of fact has the responsibility to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Appellant's possession of such a large amount of pseudoephedrine, as well as the starter fluid and lithium batteries, leads to an inference that Appellant possessed the pseudoephedrine with the intent to manufacture methamphetamine. Giving proper deference to the fact finder's determinations and without substituting our judgment for that of the fact finder's, we hold that the evidence is legally and factually sufficient to support a finding of guilt beyond a reasonable doubt. We overrule Appellant's first point.

### ADMISSIBILITY

■ In his second point, Appellant contends that the trial court abused its discretion in admitting, over counsel's objection, hearsay evidence that the labeling on the packages could serve as proof of the con-

tents of the package. The State contends that the federally mandated labeling of the package provided proof that the substance was pseudoephedrine; therefore, the State was authorized to use the labeling as proof pursuant to Texas Rules of Evidence 803(17) and 902(7).

▮▮▮▮ We review the trial court's admission of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g). If the trial court's decision to admit the evidence lies within the zone of reasonable disagreement, then the decision must be upheld. *Id.* at 391; *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim.App.1998) (op. on reh'g).

The labeling constitutes hearsay because it is an extrajudicial assertion offered to prove the truth of the matter asserted that the tablets contain pseudoephedrine. *See* TEX.R. EVID. 801(d). Hearsay is inadmissible unless some other rule or statute permits introduction. TEX.R. EVID. 802. Appellant contends that no exception permits the introduction of the labels as a method of proving the chemical contents of the bottles. The State suggests that Rule 803(17) furnishes the requisite exception.

Rule 803(17) provides, as an exception to the rule against the admission of hearsay, "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." TEX.R. EVID. 803(17). The cold medication label constitutes a list of the medication it contains; therefore, we must determine whether the list is generally used and relied upon by the public. *See*

*id.* Federal regulations provide extensive requirements for the labeling of drugs, including the established name and quantity of the active ingredients, which suggests that the cold medication labels are accurate and trustworthy. *See* 21 U.S.C. § 352(e) (1999).[1]

The fact that the cold medicine was contained in bottles that remained unopened indicates that the contents had not been changed since the manufacturer bottled them. The labeling on the packages indicating that the cold medicine contained pseudoephedrine was sufficiently reliable to establish that the cold medicine did in fact contain pseudoephedrine. We hold that the trial court did not abuse its discretion in admitting the labels as substantive proof that the cold medicine contained pseudoephedrine. We overrule Appellant's second point.

## CONSTITUTIONALITY

▮▮▮ In his third point, Appellant complains that Texas Health and Safety Code Section 481.124(a)(2) is unconstitutional; specifically, he contends that it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it is vague and indefinite. *See* U.S. CONST. amend. XIV. He asserts that the statute fails to delineate the forbidden conduct that must be avoided, in that no ordinary person would ever know whether he or she was subject to arrest and prosecution because no certain quantity of pseudoephedrine is prohibited, and the statute permits arbitrary and erratic arrests and convictions because the possession of pseudoephedrine

1. Indiana, Mississippi, and Iowa have rules of evidence identical to Texas Rule of Evidence 803(17). In cases factually similar to the case at bar, the highest courts of these states have determined that the labeling on drug containers is sufficiently reliable as to constitute an exception to the ban on the admission of hearsay. *Reemer v. State*, 835 N.E.2d 1005, 1006–09 (Ind.2005); *Burchfield v. State*, 892 So.2d 191, 198–200 (Miss.2004); *State v. Heuser*, 661 N.W.2d 157, 163–65 (Iowa 2003).

may be subjectively enforced by law enforcement officials any time they discover pseudoephedrine in a person's possession. The State contends that Appellant has failed to preserve this point for our review because he first raised the issue in an untimely filed amended motion for new trial.

There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. *Fluellen v. State*, 104 S.W.3d 152, 167 (Tex.App.-Texarkana 2003, no pet.). The constitutionality of a statute as applied must be raised in the trial court in order to preserve error. *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim.App.1995).

Under the Texas Rules of Appellate Procedure, a motion for new trial must be filed within thirty days of the date that the sentence was imposed or suspended in open court. Tex.R.App. P. 21.4. An amended motion for new trial may be filed within thirty days after the date the trial court imposes or suspends the sentence in open court but before the court overrules any preceding motion for new trial, but an amended motion for new trial cannot be considered if it is filed after this thirty-day time period. *Id.; see also Rangel v. State*, 972 S.W.2d 827, 838 (Tex.App.-Corpus Christi 1998, pet. ref'd); *Johnson v. State*, 925 S.W.2d 745, 747 (Tex.App.-Fort Worth 1996, pet. ref'd); *Kiser v. State*, 788 S.W.2d 909, 915 (Tex.App.-Dallas 1990, pet. ref'd).

The trial court sentenced Appellant in open court on July 28, 2004. Appellant timely filed his first motion for new trial and a second motion for new trial, but made no mention of his constitutionality challenge. Appellant then filed a third motion for new trial, in which he asserted his constitutionality challenge. The deadline for filing all motions for new trial in the present case was August 27, 2004, but the certificate of service reflects that the third motion for new trial, alleging the constitutionality challenge, was mailed on August 28, 2004 and was filed in the trial court on August 30, 2004. *See* Tex.R.App. P. 21.4. Appellant untimely filed his last motion for new trial; therefore, to the extent that Appellant is asserting an as-applied constitutional challenge, we hold that he has not preserved error for our review.

Appellant was not required, however, to raise in the trial court a constitutional challenge that the statute is facially invalid, because a defendant may raise a constitutional challenge to the facial validity of a statute for the first time on appeal. *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim.App.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Accordingly, we will address Appellant's argument that the statute he was convicted under is unconstitutionally void for vagueness. *See id.*

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting it. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978); *Sisk v. State*, 74 S.W.3d 893, 901 (Tex. App.-Fort Worth 2002, no pet.). It is the challenger's burden to show that the statute is unconstitutional. *Webb v. State*, 109 S.W.3d 580, 582 (Tex.App.-Fort Worth 2003, no pet.). The statute must be upheld if a reasonable construction can be ascertained that will render the statute constitutional and carry out the legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim.App. [Panel Op.] 1979); *Sisk*, 74 S.W.3d at 901.

To pass a vagueness challenge, a criminal statute must give a person of

ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *Long v. State,* 931 S.W.2d 285, 287 (Tex.Crim.App. 1996). Further, the law must establish determinate guidelines for law enforcement. *Long,* 931 S.W.2d at 287.

A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.) (op. on reh'g), *cert. denied,* 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the appellant to first show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.[2] *Id.; Fluellen,* 104 S.W.3d at 167. In determining whether a statute provides adequate guidelines for its enforcement, the reviewing court may consider hypothetical situations to determine whether the guidelines are adequate. *Margraves v. State,* 34 S.W.3d 912, 921 (Tex.Crim.App.2000). Initially, though, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. *Santikos,* 836 S.W.2d at 633.

The statute in question provides in pertinent part as follows:

(a) A person commits an offense if, with the intent to unlawfully manufacture a controlled substance, the person possesses or transports:

(1) anhydrous ammonia;

(2) an immediate precursor; or

(3) a chemical precursor or an additional chemical substance named as a precursor by the director under Section 481.077(b)(1).

Tex. Health & Safety Code Ann. § 481.124 (Vernon Supp.2005). Section 481.077 regulates the selling and distribution of chemical precursors, which, under the health and safety code, include pseudoephedrine. *Id.* §§ 481.002(51), 481.077.

Appellant was charged with violating section 481.124 by possessing pseudoephedrine with the intent to manufacture a controlled substance. Appellant asserts that this statute fails to instruct ordinary people with any level of precision as to what conduct must be avoided in order to avert arrest and prosecution. Additionally, Appellant complains that the statute fails to outlaw any particular quantity of pseudoephedrine that would trigger an arrest and subsequent prosecution. We disagree. The clear language of the statute does not proscribe the mere possession of pseudoephedrine; rather, it prohibits the possession of pseudoephedrine with the intent to manufacture methamphetamine. *See id.* § 481.124. Thus, any person of ordinary intelligence would understand that it is not the mere possession of pseudoephedrine that is prohibited, but it is the possession of pseudoephedrine coupled with the intent to manufacture methamphetamine that is unlawful. *See id.* Therefore, the possession of any quantity of pseudoephedrine, if the possessor has the intent to manufacture methamphetamine, will lead to a violation of this statute. *See id.* As previously discussed, the evidence presented was sufficient for the jury to infer that Appellant possessed these items with the intent to

**2.** A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment, but such a statute is not at issue here. *See Santikos,* 836 S.W.2d at 633.

manufacture methamphetamine; therefore, the statute is not unconstitutionally vague as applied to him.

Appellant also asserts that the statute punishes lawful conduct that does not amount to more than mere preparation, and thus, the statute would never pass muster under the criminal attempt statute. *See* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003). He contends that because mere preparation is insufficient to sustain a conviction for criminal attempt, the statute subjects people to arbitrary and erratic enforcement in that it prosecutes something that does not amount to more than mere preparation. He cites no authority for the proposition that the challenged statute should pass muster under the criminal attempt statute.[3]

Texas Health and Safety Code section 481.124 prohibits the possession of certain items with the intent to manufacture controlled substances. It is not the manufacturing of these controlled substances the statute prohibits, but rather it is the possession of the items necessary for the manufacturing of these drugs combined with the intent to manufacture controlled substances that is prohibited. The offense for which Appellant was convicted is a completely separate offense from the offense of attempted manufacture of methamphetamine. Appellant has failed to demonstrate how the statute unconstitutionally permits arbitrary and erratic enforcement.

Appellant further complains that the statute permits arbitrary and erratic arrests because the possession of pseudoephedrine may be subjectively enforced by law enforcement officials anytime they discover pseudoephedrine in the possession of speeding motorists or others. Here, Appellant contends that the statute was arbitrarily applied to him because the arresting officer recognized him when he stopped Appellant and on that basis called a dog unit to respond to the scene. Appellant never complained on appeal about the traffic stop, the officer's probable cause to search, or the manner in which the search was conducted. Furthermore, the mere fact that the officer recognized Appellant does not show that he arbitrarily arrested Appellant for the possession of pseudoephedrine with the intent to manufacture methamphetamine. The officer determined that the amount of pseudoephedrine Appellant possessed was inconsistent with personal use. Additionally, the officer noted that Appellant possessed both lithium batteries and starter fluid, both used for the manufacturing of methamphetamine. Therefore, we conclude that the statute was not unconstitutional as applied to Appellant. Because the statute was not unconstitutional as applied to Appellant, he cannot establish that the statute operates unconstitutionally as to all convicted persons. Thus, Appellant has failed to establish that under no set of circumstances would the statute be valid. *See Santikos*, 836 S.W.2d at 633. Accordingly, we overrule Appellant's third point.

### CONCLUSION

Having overruled Appellant's three points, we affirm the trial court's judgment.

---

**3.** We note that the penal code also contains statutes that prohibit the possession of certain items with the intent to use the items in a particular manner. *See, e.g.,* TEX. PENAL CODE ANN. § 43.26(e)(Vernon 2003) (outlawing the possession of child pornography with the intent to promote child pornography); TEX. PENAL CODE ANN. § 46.09 (Vernon 2003) (precluding the possession of components of an explosive weapon with the intent to combine the components into an explosive weapon for use in a criminal endeavor).