

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00015-CR

_____

THE STATE OF TEXAS, Appellant

V.

JOHN HARDY TAYLOR, Appellee

_____

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 23053

_____

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

## I.    BACKGROUND

In its indictment, the State alleged that, on or about August 13, 2008, John Hardy Taylor was the owner of a dog he knew to be dangerous.    It is further alleged that on the date in question, Taylor's dangerous dog, while not restrained in a secure enclosure, made an unprovoked attack on Haiden Lynn McCurry, causing serious bodily injury—a violation of Section 822.005(a)(2) of the Texas Health and Safety Code.[1]    The trial court dismissed the indictment against Taylor with prejudice on the ground that Section 822.005(a)(2) is unconstitutional, facially and as applied, because it failed to set forth any required culpable mental state.    TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2) (Vernon 2010).    The State appeals from the order quashing the indictment in trial court cause number 23053.    We find the statute to be constitutional and reverse the judgment finding the statute unconstitutional.    We do affirm that part of the judgment quashing the indictment because it fails to allege a culpable mental state,[2] but modify it as dismissed without prejudice.

---

[1]Because this is an appeal of a pretrial order, no testimony or evidence appears in the record.

[2]McCurry was attacked by two dogs on August 13, 2008, both of which are allegedly owned by Taylor. Consequently, Taylor was indicted for both attacks.    The second indictment, issued in trial court cause number 23054, is the subject of a separate appeal, the opinion in which is issued of even date herewith.    We have also issued, of even date herewith, two additional opinions stemming from two separate indictments issued under Section 822.005(a)(1) of the Texas Health and Safety Code, involving attacks by Taylor's dogs on Judy Pless, also on August 13, 2008.    TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1) (Vernon 2010).    Those opinions are issued in cause numbers 06-10-00013-CR and 06-10-00014-CR.

2

## II. STANDARD OF REVIEW

Because the sufficiency of an indictment is a question of law, a trial court's decision to quash an indictment is reviewed de novo. *State v. Moff*, 154 S.W.3d 599, 600 (Tex. Crim. App. 2004). In reviewing the constitutionality of a statute, the court must presume the statute is valid and the Legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). In the absence of contrary evidence, we must presume that the Legislature acted in a constitutionally sound fashion. The burden rests upon the individual who challenges a statute to establish its unconstitutionality. *Id.* Thus, this appeal presents an unusual situation where, even though Taylor was successful in having the indictment quashed, the law nevertheless imposes a presumption that the statute is valid. In this regard, the Texas Court of Criminal Appeals has determined that:

> A statute is void for vagueness if it fails to define the criminal conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement. If, as in this case, a statute does not substantially implicate constitutionally protected conduct or speech, it is valid unless it is impermissibly vague in all applications or as applied to the defendant.

*Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). The statute must be upheld if a reasonable construction can be ascertained that will render the statute constitutional and carry out the legislative intent. *Shaffer v. State*, 184 S.W.3d 353, 363 (Tex. App.—Fort Worth 2006, pet. ref'd).

3

# III.    ANALYSIS

This is an appeal by the State from the trial court's order quashing the indictment against Taylor with prejudice.   At the trial court level, Taylor maintained that Section 822.005(a)(2) of the Texas Health and Safety Code was unconstitutional because it does not include a culpable mental state.   On appeal, Taylor does not advance this argument; rather, he contends that this section of the statute is unconstitutionally vague because it fails to impose a duty to act.   Because the trial court's order quashing the indictment with prejudice is based upon the determination that Section 822.005(a)(2) is unconstitutional because it does not set forth a culpable mental state, and is therefore unconstitutionally vague, we address both attacks upon the constitutionality of the statute.[3]   The State maintains that Section 822.005(a)(2) is not unconstitutional because it imposes a mental state of knowingly on each element of the offense.

## A.    Challenge to the Constitutionality of the Statute

### 1.  The Statute Requires a Culpable Mental State

Section 822.005(a)(2) provides that a person commits an offense if the person is the owner of a dog and the person:

---

[3]The record before us does not clearly indicate whether the statute is alleged to be unconstitutional on its face or as applied to Taylor.   Because the order quashing the indictment was based upon the statute's unconstitutionality, both facially and as applied, we will treat this appeal as implicating both bases of unconstitutionality.

(2) knows the dog is a dangerous dog by learning in a manner described by Section 822.042(g) that the person is the owner of a dangerous dog, and the dangerous dog makes an unprovoked attack on another person that occurs at a location other than a secure enclosure in which the dog is restrained in accordance with Subchapter D and that causes serious bodily injury, as defined by Section 822.001 . . . .

TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2). Subsection (a)(2) of Section 822.005 requires that the owner of a dangerous dog know that his or her dog is dangerous.[4] While the State contends the relevant mental state for this section of the statute is that of "knowingly," based on the owner's knowledge that his or her dog is dangerous, mere knowledge is not actionable as a criminal offense. The owner of a dangerous dog must also engage in conduct to which a culpable mental state attaches.[5] The conduct mandated by this section of the statute is to restrain the dangerous dog in a secure enclosure "in accordance with Subchapter D." TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2). Subchapter D, entitled "Dangerous Dogs," sets forth, among other things, a number of requirements with which the owner of a dangerous dog must comply. One such requirement is that the owner of a dangerous dog must "restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure . . . ." TEX.

---

[4]A person learns he or she has a dangerous dog in only three ways: (1) the owner knows of an attack by the dog; (2) the owner receives notice that a justice court, county court, or municipal court has found that the dog is a dangerous dog; or (3) the owner is informed by an animal control authority that the dog is a dangerous dog. TEX. HEALTH & SAFETY CODE ANN. § 822.042(g) (Vernon 2010).

[5]*See* Section 6.02 of the Texas Penal Code, which provides that "a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires." TEX. PENAL CODE ANN. § 6.02(a) (Vernon Supp. 2009).

HEALTH & SAFETY CODE ANN. § 822.042(a)(2) (Vernon 2010). When the owner of a dangerous dog fails to restrain the dangerous dog and the dog makes an unprovoked attack on another person that causes serious bodily injury or death, the owner has committed an offense under the statute. The relevant inquiry, therefore, is whether a culpable mental state attaches to this section of the statute.

While Section 822.005(a)(2) does not specifically require a culpable mental state, neither does it specifically dispense with any culpable mental state. Mere silence as to the culpable mental state is not sufficient to indicate that the Legislature has plainly dispensed with a mental element. *Aguirre v. State*, 22 S.W.3d 463, 471 (Tex. Crim. App. 1999). The issue of whether Section 822.005(a)(2) of the Texas Health and Safety Code requires a culpable mental state is resolved by the application of Section 6.02 of the Texas Penal Code, which provides, in pertinent part:

> (b)      *If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.*
>
> (c)      If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.

TEX. PENAL CODE ANN. § 6.02(b), (c) (Vernon Supp. 2009) (emphasis added).

6

The imposition of a culpable mental state upon a statute typically involves crimes with more severe punishment and involve *mala in se* crimes.[6]  *See Haggins v. State*, 785 S.W.2d 827 (Tex. Crim. App. 1990) (injury to a child); *McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989) (unauthorized use of a motor vehicle); *McClain v. State*, 687 S.W.2d 350 (Tex. Crim. App. 1985) (theft).   On the other hand, public welfare offenses involve neglect where the law requires care, or inaction where it imposes a duty.[7]  *Morissette v. United States*, 342 U.S. 246, 256 (1952); *Tovar v. State*, 978 S.W.2d 584, 587 (Tex. Crim. App. 1998).   Public welfare offenses typically involve relatively minor punishment, and tend to hold persons strictly liable for their conduct. *Tovar*, 978 S.W.2d at 587.

To determine whether a statute plainly dispenses with a culpable mental state as an element of a charged offense, certain guidelines should be followed.  *Aguirre*, 22 S.W.3d at 470–77 (culpable mental state required in ordinance which regulates adult businesses, and that is silent about whether a culpable mental state is required).   We will examine those that appear to apply here.

We first look to the language of the statute.   If any section of the statute prescribes a mental state while another section omits a mental state, such omission indicates or implies that the

---

[6]*Malum in se* is defined as "[a] crime or act that is inherently immoral, such as murder, arson, or rape."   BLACK'S LAW DICTIONARY 1045 (9th ed. 2009).

[7]*Malum prohibitum* is defined as "[a]n act that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral.   Misdemeanors such as jaywalking and running a stoplight are *mala prohibita*, as are many regulatory violations."   *Id.*

Legislature intended to dispense with a mental element in that section. *Id.* at 473. As previously mentioned, Section 822.005(a)(1) incorporates the mental state of criminal negligence.[8] The inclusion of a mental state in subpart (a)(1) of the statute would therefore seem to indicate an intent on the part of the Legislature to dispense with a mental element in Section 822.005(a)(2). TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2).

We must also examine the nature of the offense to determine whether the statute dispenses with a culpable mental state. In this regard, we are to determine whether the offense is more properly classified as *malum in se*, meaning "inherently evil" or *malum prohibitum*, meaning "prohibited evil."[9] *Aguirre*, 22 S.W.3d at 473; *Tovar*, 978 S.W.2d at 591. Strict liability offenses are generally *malum prohibitum* and are traditionally associated with the protection of the public health, safety, or welfare. *Aguirre*, 22 S.W.3d at 473. Examples of such strict liability offenses include prohibitions against water pollution,[10] driving while intoxicated,[11] the sale of horsemeat for human consumption,[12] and speeding.[13]

---

[8]Subpart (a)(1) of the statute provides:

> (1)    with criminal negligence, as defined by Section 6.03, Penal Code, fails to secure the dog and the dog makes an unprovoked attack on another person that occurs at a location other than the owner's real property or in or on the owner's motor vehicle or boat and that causes serious bodily injury, as defined by Section 1.07, Penal Code, or death to the other person. . . .

TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1).

[9]*See also* definitions of these terms as stated in BLACK'S LAW DICTIONARY, fn. 6, fn. 7.

[10]*Am. Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex. Crim. App. 1979).

[11]*Owen v. State*, 525 S.W.2d 164 (Tex. Crim. App. 1975).

The offense described in Section 822.005(a)(2) is most aptly described as a *malum in se* offense—immoral in its nature and injurious in its consequences. This statute is designed to protect against more than a probability of danger or a promotion of the social order. When a person owns a dog he or she knows to be dangerous—having been specifically put on notice of that fact in the manner prescribed by statute—and fails to restrain his or her dangerous dog, resulting in serious bodily injury or death of another due to an unprovoked attack by the dog, such act is wrong in and of itself. This factor weighs in favor of interpreting an offense under Section 822.005(a)(2) as requiring a culpable mental state. *See id.* at 475–77.

We next examine the severity of the punishment for a violation of this section of the statute. Other things being equal, the greater the possible punishment, the more likely some fault is required. *Thompson v. State*, 44 S.W.3d 171, 180 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The lighter the punishment, the more likely the Legislature meant to impose liability without fault. *Aguirre*, 22 S.W.3d at 472. A violation of Section 822.005(a)(2) is punishable as a third degree felony unless the attack causes death, in which event, the offense is a felony of the second degree. The punishment for a second degree felony is imprisonment in the Texas Department of Criminal Justice for any term of not more than twenty years or less than two years. TEX. PENAL CODE ANN. § 12.33 (Vernon Supp. 2009). The punishment for a third degree felony

---

[12]*Neill v. State*, 154 Tex. Crim. 549, 229 S.W.2d 361, 363 (1950).

[13]*Goodwin v. State*, 63 Tex. Crim. 140, 138 S.W. 399, 400 (1911).

is imprisonment in the Texas Department of Criminal Justice for any term of not more than ten years or less than two years. TEX. PENAL CODE ANN. § 12.34 (Vernon Supp. 2009). We find possible confinement of up to twenty years for a violation of this statute a strong indicia that a culpable mental state is required. *See Aguirre*, 22 S.W.3d at 475–76.

The seriousness of harm to the public which may be expected to follow from the forbidden conduct is yet another factor to consider in determining whether the Legislature meant to impose liability without fault or whether it meant to require fault, but failed to spell it out clearly. *Id.* at 476. Generally, the more serious the consequences to the public, the more likely the Legislature meant to impose liability without regard to fault, and vice versa. *Id.* at 471 n.27; *Thompson*, 44 S.W.3d at 180. Here, the consequences flowing from a violation of the statute are serious bodily injury or death to a particular individual. These are not the type of "serious consequences to the public" typically addressed in strict liability statutes.[14] Accordingly, and because the statute spells out the result of the violation, this factor is another indicia that a culpable mental state is required for a violation of Section 822.005(a)(2) of the Texas Health and Safety Code.

In more recent cases, an important factor in the determination of whether the statute dispenses with the requirement of a culpable mental state is the subject of the statute. *Aguirre*, 22 S.W.3d at 473. In this regard, strict liability is generally associated with the protection of the public health, safety, and welfare. *Id.*; *Thompson*, 44 S.W.3d at 179. As noted earlier in this

---

[14]Strict liability statutes protect the public from, among other things, the consequences of drunken driving, the sale of adulterated food, polluted air and water, and speeding. *See* fn. 10–13.

opinion, the courts of this State have upheld statutes imposing strict liability for a number of public health and safety offenses, such as driving while intoxicated, speeding, water pollution, and the sale of horsemeat for human consumption.[15]   There is no contention here that the statute in question is in the class of a public safety statute.   Rather, this statute is designed to protect individuals from being killed or seriously injured by dogs known to be dangerous by their owners, yet left unrestrained.   This factor weighs in favor of interpreting an offense under Section 822.005(a)(2) as requiring a culpable mental state.

In certain situations, it is difficult to prove the mental state of an accused.   The greater the difficulty in proving mental state, the more likely legislators intended to make the offense one of strict liability, in order to achieve more effective law enforcement.   *Aguirre*, 22 S.W.3d at 476. Here, the statute requires knowledge on the part of the owner that his or her dog is dangerous by learning that the dog is dangerous in a manner described in Section 822.042(g).   TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2).   Section 822.042(g) provides that:

> For purposes of this section, a person learns that the person is the owner of a dangerous dog when:
>
> (1)   the owner knows of an attack described in 822.041(A) or (B);
>
> (2)   the owner receives notice that a justice court, county court, or municipal court has found that the dog is a dangerous dog under Section 822.0423; or
>
> (3)   the owner is informed by the animal control authority that the dog is a dangerous dog under Section 822.0421.

---

[15]*See* fn. 10–13.

TEX. HEALTH & SAFETY CODE ANN. § 822.042(g).

Each of the listed methods of acquiring knowledge of the dog's dangerous propensities is subject to objective verification in most instances. Under these circumstances, a prosecutor would likely encounter little difficulty in proving that the owner of a dangerous dog who makes an unprovoked attack on another person, at a location other than a secure enclosure in which the dog is restrained, failed to restrain the dangerous dog in a reckless, knowing, or intentional manner. *See* TEX. PENAL CODE ANN. § 6.02 (Vernon Supp. 2009). Accordingly, this factor weighs in favor of interpreting an offense under Section 822.005(a)(2) as requiring a culpable mental state.

The fewer the expected prosecutions for commission of an offense, the more likely the Legislature meant to require prosecuting officials to delve into the issue of fault. *Aguirre*, 22 S.W.3d at 475–76, 476 n.51. Because we have no means of determining the number of prosecutions expected for this offense, this is a neutral factor in our analysis.

After having analyzed the relevant attributes of the statute in light of principles articulated by the Texas Court of Criminal Appeals in *Aguirre*, we conclude that Section 822.005(a)(2) of the Texas Health and Safety Code is not a strict liability statute. The Legislature did not intend to dispense with the requirement of a culpable mental state in the enforcement of this provision. "[I]ntent, knowledge, or recklessness" will suffice to establish criminal responsibility under the statute. *See* TEX. PENAL CODE ANN. § 6.02. We, therefore, conclude that Section 822.005(a)(2) is neither facially unconstitutional, nor is it unconstitutional as applied to Taylor, because it is

12

subject to a culpable mental state of at least "recklessly." *See* TEX. PENAL CODE ANN. § 6.02(c).

### 2. The Statute Complies with Sections 6.01(a) and (c) of the Texas Penal Code

Taylor contends that Section 822.005(a)(2) of the Texas Health and Safety Code is unconstitutional because it violates Section 6.01(a) of the Texas Penal Code[16] by not requiring a voluntary act or omission and further violates Section 6.01(c)[17] because it does not set forth a duty to perform an act. We disagree.

First, **S**ection 822.005(a)(2) of the Texas Health and Safety Code imposes a duty to secure a dangerous dog upon the *owner* of the dangerous dog. Criminal liability is not unlimited in scope; rather, liability is limited only to individuals who own dangerous dogs they know to be dangerous. The term "owner" is defined in Section 822.041(5) of the Code as "a person who owns or has custody or control of the dog." TEX. HEALTH & SAFETY CODE ANN. § 822.041(5) (Vernon 2010). The statute identifies the source of Taylor's duty—the fact that he is the owner of a dog he knows to be dangerous. *See Smith v. State*, 603 S.W.2d 846, 847 (Tex. Crim. App. 1980) (indictment charging criminal omission must set forth facts which give rise to a statutory duty to act). In this instance, the indictment did not allege that Taylor knowingly or recklessly failed to restrain the dangerous dog and therefore appears to be subject to a motion to quash. An

---

[16]Section 6.01(a) of the Texas Penal Code provides that "a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE ANN. § 6.01(a) (Vernon 2003).

[17]Section 6.01(c) of the Texas Penal Code provides that a person who fails to perform an act "does not commit an offense unless a law . . . provides that the omission is an offense or . . . provides that he has a duty to perform the act." TEX. PENAL CODE ANN. § 6.01(c) (Vernon 2003).

indictment or information must, by direct and positive averments, allege all of the constituent elements of the offense sought to be charged. *Holley v. State,* 167 S.W.3d 546, 548 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Chance v. State*, 563 S.W.2d 812, 814 (Tex. Crim. App. 1978)). The Texas Penal Code defines "element of offense" as: "(A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense." TEX. PENAL CODE ANN. § 1.07(a)(22) (Vernon Supp. 2009).

But the fact that this indictment does not allege with particularity the charged conduct does not make the statute unconstitutional.

Second, Section 822.005(a)(2) provides that when the owner knows the dog is dangerous and the dangerous dog makes an unprovoked attack, "that occurs at a location other than a secure enclosure . . . in accordance with Subchapter D . . ." that owner commits an offense. TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2). Section 822.042, found in Subchapter D of the code, sets forth the requirements with which the owner of a dangerous dog must comply. Among other things, the owner of a dangerous dog is required to "restrain the dog at all times on a leash or . . . in a secure enclosure." TEX. HEALTH & SAFETY CODE ANN. § 822.042(a)(2). A "secure enclosure" is a "fenced area" that is locked and marked as containing a dangerous dog. A "secure enclosure" must also be capable of preventing entry by the general public, including children, and of preventing the dog's escape or release. TEX. HEALTH & SAFETY CODE ANN. § 822.041(4) (Vernon 2010).

14

Thus, both the plain language of Sections 822.005(a)(2) and 822.042 impose upon the owner of a dangerous dog the duty to restrain or secure his or her animal. These provisions of the Code define criminal conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited. *See Lawrence*, 240 S.W.3d at 915. Compliance with these provisions is subject to objective verification, thus eliminating the concern of arbitrary or discriminatory enforcement. The duty is clearly stated, and the manner of compliance is set forth in detail. The failure to perform this duty is criminalized when the dangerous dog causes serious bodily injury or death. TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2). This section of the statute complies with the requirements of Sections 6.01(a) and (c) of the Texas Penal Code and is therefore not unconstitutional. *See* TEX. PENAL CODE ANN. § 6.01(a), (c).

## B. The Trial Court Did Not Err in Quashing the Indictment

Taylor timely filed a motion to quash the indictment complaining that the State failed to allege a culpable mental state. The trial court, in granting the motion to quash, found the statute to be unconstitutional for the failure to set forth any required culpable mental state. The failure to allege a culpable mental state when one is required does not render the charging instrument void. *Ex parte Weise*, 55 S.W.3d 617, 621 (Tex. Crim. App. 2001). Because Section 822.005(a)(2) is constitutional, the trial court erred in treating the charging instrument as void and in dismissing the indictment with prejudice. If a culpable mental state is required and the indictment fails to allege one, then the charging instrument is subject to a motion to quash. *Id.* The charging instrument in

15

this case failed to allege a culpable mental state with respect to Taylor's duty to restrain his allegedly dangerous dog in accordance with the statute. The trial court therefore correctly quashed the indictment, but erred in doing so with prejudice. Accordingly, we modify the order quashing the indictment to provide that said dismissal is without prejudice.

## IV.    CONCLUSION

We find the judgment declaring the statute unconstitutional was in error and modify the judgment quashing the indictment to provide such dismissal is without prejudice. As modified, the judgment of the trial court is affirmed.

Jack Carter
Justice

Date Submitted:     July 6, 2010
Date Decided:      August 4, 2010

Publish

16