

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00212-CR

TERRY LYNN FINCHER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 97TH DISTRICT COURT OF CLAY COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In one issue that concerns evidentiary sufficiency, appellant Terry Lynn Fincher appeals his second-degree-felony conviction for indecency with a child by contact.[2] We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1), (d) (West 2011).

## Background Facts

In 2010, when Julia[3] was nine years old and was acting "like she was scared," her grandmother, Mildred, after being prompted by Julia's mother, Cynthia, asked Julia whether anyone had touched her in an inappropriate place.[4] Julia said yes. Specifically, after Mildred told Julia that Mildred "already knew the truth" and "just needed [Julia] to tell [Mildred]," Julia said that appellant had licked and kissed her private area over her clothes. According to Mildred, after making this statement, Julia acted like something had been "lifted off her shoulders, like she didn't have to be scared [anymore]." When Mildred assured Julia that she was okay, Julia began to play and went "back to her routine of the way she was."

Mildred contacted the police. Julia participated in an official interview about her allegation at a place called Patsy's House. Roger Jennings, who was a sheriff's deputy at that time, received a referral from Child Protective Services (CPS) about Julia's outcry and attended the interview. When Jennings asked appellant about Julia's allegation, he was "evasive in his answering" but denied the allegation.

---

[3]To protect the anonymity of the victim, we will refer to her and to her family members by using pseudonyms. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[4]Mildred testified that she commonly asked this question to Julia and to another granddaughter so that she could "stop something from happening to them." Mildred's 2010 conversation with Julia occurred after they had attended a family funeral.

A grand jury indicted appellant for indecency with a child by contact. The indictment alleged that appellant had touched the genitals of a child with the intent to arouse or gratify his sexual desire. Before trial, the State filed a document asserting that appellant's punishment should be enhanced in the event of his conviction because he had been convicted of two other felonies. Appellant filed various pretrial motions and pled not guilty.

After receiving evidence and arguments presented by both parties, a jury convicted appellant. The State then presented evidence concerning his punishment, including his prior convictions. The jury found that appellant had been previously convicted of indecency with a child[5] and therefore, as required by the penal code, assessed his punishment at confinement for life.[6] The trial court sentenced appellant accordingly, and he brought this appeal.

**Evidentiary Sufficiency**

Appellant argues only that the evidence is insufficient to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*,

[5]Appellant pled not true to the State's allegation of his previous conviction for indecency with a child. The State, however, presented evidence that appellant was convicted of indecency with a child in 1988 pursuant to a guilty plea.

[6]*See* Tex. Penal Code Ann. § 12.42(c)(2)(A)(i), (B)(ii) (West Supp. 2013).

3

443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). A factfinder is free to accept or reject any or all of the evidence of either party and any or all of the testimony of any witness. *Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) (*citing Hernandez v. State*, 161 S.W.3d 491, 500 & n.28, 501 (Tex. Crim. App. 2005)).

To obtain a conviction for indecency with a child by contact under the circumstances of this case, the State was required to prove that while Julia was younger than seventeen years old, appellant touched her genitals (including through her clothing) with the intent to arouse or gratify his sexual desire. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1); *Bazanes v. State*, 310 S.W.3d 32, 36 (Tex. App.—Fort Worth 2010, pet. ref'd). Julia's testimony proved these facts, and that testimony alone is sufficient to support appellant's conviction.[7] *Connell*

---

[7]Jennings testified that he did not find any forensic or physical evidence to substantiate Julia's allegation against appellant. But there is "no general requirement that the testimony of a minor who is a sexual assault victim be corroborated by medical or physical evidence." *Elliott v. State*, No. 02-10-00322-CR, 2011 WL 1435208, at *3 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op., not designated for publication).

*v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.); *see Bazanes*, 310 S.W.3d at 40.

Julia was eleven years old when she testified. In the jury's presence, she demonstrated her recognition of the difference between truth and lies. She stated that she had previously lived in Henrietta, Texas with appellant[8] and that once while she was doing so, he had "kissed and licked [her] vagina" on top of her clothes. Julia testified that appellant kissed her vagina once and licked it "a few times" before stopping on his own volition. According to Julia's testimony, this event occurred while she was in a tree and while appellant was standing in a chair and was rubbing his private parts with his hand underneath sweat pants. According to Julia, with appellant's assistance, she got out of the tree and went back to her residence, but appellant instructed her to not tell anyone about what had occurred.

Julia testified that a few months later, she made the outcry to Mildred after Mildred had asked her if anyone had hurt her. According to Julia, appellant sometimes referred to her as his "secret girlfriend."

Although appellant argues that Julia's testimony should be discredited because Mildred allegedly "planted the idea of an inappropriate touching" in Julia's mind, the jury was sole judge of the weight and credibility of the evidence, including Julia's and Mildred's testimonies. *See* Tex. Code Crim. Proc. Ann. art.

---

[8]Julia and appellant lived in separate trailers on the property in Henrietta.

5

38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. We may not re-evaluate the weight and credibility of Julia's testimony and substitute our judgment for that of the jury. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Julia testified that before she gave her initial interview at Patsy's House about her allegation against appellant, her mother and Mildred had told her only to tell the truth. She also testified that neither her mother nor Mildred had told her what to say at trial. Moreover, Mildred's testimony showed only that before Julia's outcry, Mildred had asked Julia about sexually inappropriate behavior generally, not that she had previously asked about appellant specifically. Furthermore, the record does not contain evidence indicating a motive for Mildred to accuse appellant of a sexual crime.[9] And even if the evidence could raise an inference that Mildred planted the idea of appellant's indecency with Julia into Julia's mind, we must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

Appellant also appears to argue that Cynthia (Julia's mother) had a reason to pressure Julia into alleging a sexual crime against appellant. Patricia Alford, who worked for CPS at the time of appellant's trial and at the time of Julia's outcry, testified that in October 2010, she was assigned to work on a case

---

[9]Mildred testified that she had dated appellant but that the relationship had ended on good terms.

6

involving the alleged physical abuse of a child by Cynthia. Alford testified that she first learned of Juila's allegation against appellant while investigating the claim against Cynthia. Alford explained, however, that CPS eventually concluded that there was no evidence of any physical abuse by Cynthia against the child at issue but that evidence substantiated appellant's crime against Julia.

Appellant contends that the CPS investigation into Cynthia's alleged physical abuse of a child makes Julia's outcry, which occurred near that time, unreliable.[10] But again, the jury was the sole judge of the reliability and credibility of Julia's testimony, and by convicting appellant, the jury implicitly found that testimony to be reliable and credible. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *see also Castillo v. State*, No. 08-08-00332-CR, 2010 WL 4117674, at *4 (Tex. App.—El Paso Oct. 20, 2010, no pet.) (not designated for publication) ("In finding Appellant guilty of the charged offenses, the jury implicitly resolved the conflicts [in the evidence] in favor of conviction."); *Vansickle v. State*, No. 07-97-00126-CR, 1997 WL 469434, at *3 (Tex. App.—Amarillo Aug. 14, 1997, pet. ref'd) (not designated for publication) ("The question whether the complainant's testimony was credible or reliable is not for us to answer; rather, her credibility and reliability were determined by the jury as the sole judge of the credibility of the witnesses . . . .").

---

[10]Appellant does not explain why a CPS investigation into physical abuse of a child by Cynthia would have provided motivation for Cynthia, Mildred, or Julia to fabricate an unrelated sex-based allegation against appellant.

Next, appellant contends that Julia's description about how the sexual contact occurred—with her standing in a tree and with appellant standing in a chair—is "unusual," "difficult to imagine," and "difficult to believe." Appellant notes that the record does not contain a measurement of the distance between the tree branch and the chair to establish that contact from appellant's mouth to Julia's genitals was possible. But the record also does not affirmatively show that the contact was impossible. Also, the trial court admitted photographs of the tree and chair at issue, and the jury could have considered and weighed the importance of those photographs when rendering its verdict.

Finally, appellant contends that Julia's testimony was inadequate because it contained inconsistencies. For example, Julia initially testified that she did not remember what appellant's pants looked like on the day of the offense but later testified that he was wearing sweat pants. Also, although Julia testified that before the day when she made the outcry to Mildred, Mildred had never asked her whether someone had touched her inappropriately, Mildred had testified that she had asked that question to Julia several times. Although we recognize that parts of Julia's testimony created inconsistencies with other portions of the record about some collateral matters such as these,[11] our evidentiary sufficiency

---

[11]Julia was not inconsistent, in her outcry to Mildred or in her testimony, about appellant's sexual contact with her by licking her genitals through her clothes. Outcry evidence has probative value in our evidentiary sufficiency review. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *see also Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994,

8

standard requires us to resolve such inconsistencies in favor of the jury's verdict. *Shaffer v. State*, 184 S.W.3d 353, 358 (Tex. App.—Fort Worth 2006, pet. ref'd); *see also Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (explaining that reconciliation of conflicts in the evidence is within the "exclusive" province of the jury); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("The jury observed the complainant's demeanor and was entitled not only to reconcile any . . . conflicts, but even to disbelieve her recantation.").

For all of these reasons, viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the essential elements of appellant's charge of indecency with a child by contact beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768; *see also Todd v. State*, Nos. 02-12-00114-CR, 02-12-00115-CR, 2013 WL 1457735, at *2–3 (Tex. App.—Fort Worth Apr. 11, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that testimony from two children would have been sufficient, without corroborating evidence, to support a defendant's convictions for indecency with a child and aggravated sexual assault despite the presence of other evidence that a jury could have weighed against the convictions); *Jennings v. State*, No. 02-12-00046-CR, 2012 WL 6720195, at *5 (Tex. App.—Fort Worth Dec. 28, 2012, pet. ref'd) (mem. op. not designated for publication) (holding similarly). We therefore hold that the

pet. ref'd) (op. on reh'g) (stating that a "child victim's outcry statement alone can be sufficient to sustain a conviction").

evidence is sufficient to support appellant's conviction, and we overrule his only issue.

## Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 16, 2014