

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00229-CR

---

RAY LEE COCKRELL, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 23F1017-102

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef
Dissenting Opinion by Justice Rambin

# MEMORANDUM OPINION

A Bowie County jury convicted Ray Lee Cockrell of attack by dog causing serious bodily injury, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.005(b). Pursuant to the jury's assessment, the trial court sentenced Cockrell to ten years' imprisonment and imposed a $3,000.00 fine. On appeal, Cockrell (1) argues that he was egregiously harmed by the trial court's jury charge and (2) challenges the legal sufficiency of the evidence supporting the jury's finding of guilt.

Our review of the jury charge drafted by the State reveals that it is an amalgamation of several errors, including the submission of different *mentes reae* and inapplicable manner and means that are neither supported by the evidence nor allowed by law. As a result, the language of the State's charge, which the State concedes is error and which fails to ensure a defendant's legal right to a unanimous verdict on each essential element of the offense, has lead us to sustain Cockrell's first point of error. Even so, we find that legally sufficient evidence supported the jury's verdict of guilt. We find that Cockrell suffered egregious harm from the State's submitted jury charge, therefore we reverse the trial court's judgment and remand the matter for a new trial with a proper jury charge.[1]

## I.    Factual Background

The evidence at trial showed that Cockrell lived outside of city limits in a "make-shift tent" on his yard on property containing a dilapidated trailer occupied by a pack of dogs. The

---

[1]In companion cause number 06-23-00230-CR, Cockrell appeals his conviction for injury to a child by omission.

property had no electricity or running water and was enclosed by a fence too short to contain his dogs.

Cockrell's neighbor, Rodney Balding, testified that he was building a fence to contain his horses when a pack of approximately ten dogs from Cockrell's house "c[a]me chasing and attacked [him]," causing him to "run up a tree." According to Curtis Cole, a deputy with the Bowie County Sheriff's Office (BCSO), Balding said that, on July 13, 2021, Cockrell's dogs, described as "[v]arious mixed breed pit bull dogs of various color[s]," attacked his horses. According to Balding, the dogs "had a little colt, a little baby colt and they had him down on the ground eating on him and [his] red sorrel, they ate her foot up and then [his] bay horse they had her by her neck." Balding testified that Cockrell was standing at the fence while "[h]ollering for the dogs to come back," but the dogs ignored him. Balding took photos of the horses' injuries, which were displayed for the jury, and he called the BCSO, which operates animal control for Bowie County.

Cole had responded to Balding's call and spoke with Cockrell. As he approached Cockrell's home, he saw ten "pit bulls or some variation of pit bulls" who were so aggressive that Cole decided to remain in his vehicle and activated his lights and sirens until Cockrell came outside to speak with him. According to Cole, Cockrell acknowledged that the dogs were his and that he had heard commotion in Balding's pasture. Cole testified that he provided Cockrell with a written "DOGS DANGEROUS TO ANIMALS DOG OWNER'S NOTIFICATION." The written notice referencing Chapter 822 of the Texas Health and Safety Code, which was admitted into evidence, showed that Cockrell acknowledged the warning to keep his dangerous

3

dogs restrained or face misdemeanor charges by affixing his signature. Cole testified that this warning put Cockrell on notice that he had dangerous dogs.

Donald Poindexter testified that, on August 13, 2021, he was driving a scooter by Cockrell's home when a pack of fifteen to twenty dogs came after him and attacked him on the road. Poindexter said one of the dogs "grabbed [his] pant leg and yanked [his] foot off of the scooter," throwing him off balance. He said, "I was just trying to stay up and the more they pull caused me to run off the road. And I was hollering get back, you know, and beeping my horn and finally they stopped and went back." Poindexter called the BCSO and watched from a distance as a deputy spoke to Cockrell.

Also on August 13, 2021, Balding called the BCSO to report that his horses had again been attacked by Cockrell's dogs. Balding said that the dogs were starving and did not seem to be properly fed. After that incident, the BCSO advised Balding "to shoot [the dogs] if they [were] on [his] land." Balding said he told Cockrell to restrain his dogs or face the risk of them being shot, but Cockrell "told [Balding] if [he] shot his dogs, he'd kill [Balding's] horses."

Taylor Ravin,[2] who was eighteen at the time of trial, testified that she was walking past Cockrell's home in "broad daylight" on May 30, 2022, when approximately twenty-five dogs "came up to [her] and they all started biting at [her]." Ravin said she "was on the ground" "pretty much blacked out," with her clothes "ripped off of [her]" when she was rescued by her grandfather, who drove up with his truck, pulled Ravin into it, and took her to the hospital. Ravin's grandfather testified that the pack of "15, 20 dogs or more" "had [Ravin] to the ground,

---

[2]We use pseudonyms to protect the identity of "any person who was a minor at the time the offense was committed." TEX. R. APP. P. 9.10(a)(3).

stripped [her] nude, and w[ere] biting her all over," placing Ravin "like in shock." Ravin identified pictures of three pit bull mixes who attacked her during the incident. The State showed the jury pictures of Ravin's many puncture wounds from the attack. Ravin's grandfather went to speak to Cockrell, who had found Ravin's clothes, and told Cockrell that his dogs were dangerous and that they "needed to go."

Keith Roadcap, an employee of the City of Texarkana, Texas, Animal Services, testified that the BCSO asked him to assist outside of the city limits with trapping "a pack of dogs that were . . . chasing a [person] on a scooter at a time, attacking some domestic animals, a horse." Roadcap said that, because "[t]he dogs were running at large," he placed traps outside of Cockrell's property in July.[3]

Jesse Hoots, another neighbor of Cockrell's, testified that he returned home July 12, 2022, to find that a few of Cockrell's dogs had entered his backyard and killed his pet dog while it was still in its cage. Hoots chased the dogs away and called the BCSO. Rob Hadaway, a deputy with the BCSO, responded to the call. Hadaway testified that his patrol unit was soon surrounded by Cockrell's dogs and that they were "being pretty aggressive towards [him] just sitting there." Hadaway talked to Cockrell about what his dogs had done and sought his assistance in making sure the dogs were secured. According to Hadaway, Cockrell "basically told [them] to do what [they] needed to do and that he wasn't going to be helping and he walked away." Hadaway continued, "We have no idea where he went."

---

[3]The traps did not catch any dogs.

5

On August 25, 2022, Hoots called the BCSO again because Cockrell's "dogs were back in [his] yard again trying to go after [Hoots and his mother]." As a result, Hoots was pinned in his car, and his mother was trapped in the house. Hoots testified that responding officers went to speak to Cockrell about the dogs, but Cockrell was not home that day. Because the dogs that were on Hoots's property started charging at the officers, Hoots said the officers shot at the dogs. Officers Jonathan Matlock and Matt Neese responded to Hoots's call and explained the incident. Matlock testified that Cockrell's "large pack of dogs . . . about 20 to 25," became aggressive on seeing them and charged. Matlock became afraid for himself and Neese and decided to draw his weapon and shoot at the dogs. Matlock's bullets hit several of the animals, which retreated to Cockrell's property.

Nathan Smith,[4] who was ten at the time of trial, testified about his attack from Cockrell's dogs, which occurred on September 5, 2022. Nathan said that the dogs surrounded his sister and cousins in the woods and that one dog "got [his] leg" while the others surrounded him, grabbed him, and dragged him to the ground. Nathan identified pictures of the dogs that attacked him, including one that had previously attacked Ravin. The State showed the jury pictures of Nathan's severe injuries and puncture wounds. Nathan testified that he did nothing to provoke the attacks and confirmed they were not on Cockrell's property.

Nathan's sister, Beth Smith,[5] who was thirteen at trial, witnessed the attack. Beth testified that she was swimming with Nathan and her cousins in a body of water near her

---

[4]This is a pseudonym. *See* TEX. R. APP. P. 9.10.

[5]This is a pseudonym. *See* TEX. R. APP. P. 9.10.

6

grandparents' home on the day of the incident. She described the post-swim attack in the following manner:

> We're going back home[,] and this dog came up behind me and started sniffing my leg, and then my brother and my cousin started running so I just ran with them. And then these -- the dogs started like -- because we were running through the woods and then the dogs started chasing us and then we were running to go back home and this dog got my brother's leg because when I looked back he wasn't behind me. And I saw him getting attacked by them dogs, like spreading him out, and then I grabbed a stick and started beating the dogs off him.

Adam Brown,[6] Nathan's and Beth's cousin, confirmed Beth's account of the post-swim dog attack. Adam used his cell phone to call his father for help, and Beth explained that Adam's father drove up in his truck and helped her fend off the dogs long enough for everyone to get in the truck and drive home. Beth saw photos of the three dogs that had attacked Ravin and identified those same dogs as the ones that attacked Nathan.

Neese testified that he responded to the scene to find Nathan "was attacked by dogs and was eaten up by the dogs, bitten several times." While the ambulance arrived, Neese took photos of Nathan's injuries, which were shown to the jury. Brett Whitlock, an officer with the BCSO, described Nathan's injuries as "[s]evere." Benjamin Dubois, a general trauma surgeon, testified that he operated on Nathan after he suffered substantial injuries from the multiple dog bites.

Whitlock said, "As a dog owner you're responsible for your dogs, to keep them put up if they're a threat to other individuals[,] that is your responsibility to make sure that that doesn't happen." As a result, Whitlock testified that he and Neese confronted Cockrell about the attack

---

[6]This is a pseudonym. *See* TEX. R. APP. P. 9.10.

7

on Nathan. Neese, who found a dog outside of Cockrell's fence, described Cockrell as "[d]efiant."

On September 9, 2022, Hadaway executed a warrant for Cockrell's arrest. According to Hadaway, Cockrell was in his fenced yard surrounded by his dogs and refused to leave them to speak with the officers. With backup from several deputies, Cockrell was arrested after the dogs were sprayed with deterrent and an attacking dog was shot by a deputy. According to Whitlock, Cockrell's refusal to cooperate during the arrest allowed one of the dogs to charge at Neese.

After Cockrell's arrest, Roadcap assisted the BCSO again to catch and photograph the dogs on Cockrell's property but testified that they rushed at him and tried to attack him when he entered the backyard. Roadcap said that the dogs were not confined on the property and could easily escape. Even so, Roadcap caught seventeen dogs with his pole, trapped several others, and found several dogs dead. Roadcap opined that the dogs were not being fed regularly and had even eaten another dog. He said that the dogs had mange, fleas, and were very aggressive. According to Roadcap, there was no dog food on Cockrell's property, and the dogs were kept in conditions that were "very poor to the standard of animal cruelty." He added, "The animals come from two or three dogs that the owner had that inbred, so all the dogs have very similar attributes." All of Cockrell's dogs were killed.

In his defense, Cockrell testified that he took his mother's dogs when she passed away and his daughter's dogs when she moved. He stated, "All these dogs are all one family, we're all one family." Cockrell denied the allegations, said none of his dogs were mean, and claimed that his fence could contain the dogs. Cockrell testified that he gave his dogs the trailer and decided

8

to live in the yard. He testified that his dogs were his family and added, "I slept with my dogs. I ate with my dogs. I wish I would have died with my dogs." Even after hearing testimony from the State's witnesses, Cockrell denied that the dogs that had attacked others were his.

In rebuttal, Cynthia Tyree, Cockrell's neighbor and friend, testified that Cockrell was aware that his dogs had attacked Balding's horses. Tyree had also told Cockrell that his dogs were scary. She testified that there was one dog that "would try to sneak up behind [her] and nip [her] in the back of the leg" every time she visited Cockrell. When she told Cockrell that the dog had tried to come up behind her and bite her, Cockrell corrected the dog's behavior, and Tyree said that that dog never bothered her again. Tyree testified that Cockrell tried to feed his dogs regularly but struggled financially. According to Tyree, Cockrell put up signs saying he was willing to work for dog food and accepted dog food from others, including from the BCSO.

After hearing all of the evidence, the jury convicted Cockrell of attack by dog.

## II. Cockrell Was Egregiously Harmed by the State's Submitted Jury Charge

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)).

The State concedes in its brief that its jury charge contained error. Yet, to understand the impact of the various errors in the charge, we must first review the relevant law.

9

## A.    Relevant Law

Dogs are generally not considered to be dangerous animals.  Even so, some dogs may be dangerous to livestock, humans, or both.  Because dogs that are dangerous to livestock are not necessarily dangerous to humans, Chapter 822 of the Texas Health and Safety Code is divided into subchapters, including subchapter A, titled "Dogs that Attack Persons or Are a Danger to Persons," and subchapter B, titled "Dogs and Coyotes that Are a Danger to Animals."  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 822.001–.116.

The attack by dog statute found in subchapter A of Section 822.005 of the Texas Health and Safety Code provides two separate manners by which an owner of a dog can commit the third-degree offense.  *See* TEX. HEALTH & SAFETY CODE ANN. § 822.005(a).  The first manner of committing the offense occurs if the dog owner, "with criminal negligence . . . fails to secure the dog and the dog makes an unprovoked attack on another person," which "causes serious bodily injury . . . or death," provided that the attack occurs outside of the owner's real property, motor vehicle, or boat.  TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1).  No knowledge of another prior attack of a human is required under this manner.

The second manner occurs when the owner "knows" that the dog is dangerous pursuant to Section 822.042(g), "and the dangerous dog makes an unprovoked attack on another person" that causes serious bodily injury or death in a "location other than a secure enclosure in which the dog is restrained."  TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2).

10

Whereas the first manner requires the mental state of criminal negligence, the second manner requires the owner's knowledge that the dog is dangerous under Section 822.042(g), which states,

> a person learns that the person is the owner of a dangerous dog when:
>
> (1)    the owner knows of an attack described in Section 822.041(2)(A) or (B);
>
> (2)    the owner receives notice that a justice court, county court, or municipal court has found that the dog is a dangerous dog under Section 822.0423; or
>
> (3)    the owner is informed by the animal control authority that the dog is a dangerous dog under Section 822.0421.

TEX. HEALTH & SAFETY CODE ANN. § 822.042(g).

The facts of this case demonstrate that subsections 2 and 3 simply do not apply. It is undisputed that no court had made a dangerous dog determination under subsection 2. Subsection 3 applies only when an animal control authority investigates an attack on a person and determines, after investigation, that the dog is a dangerous dog. TEX. HEALTH & SAFETY CODE ANN. § 822.0421(a) (citing TEX. HEALTH & SAFETY CODE ANN. § 822.041(2)). Cockrell's notice by the animal control authority came after investigation of attack on livestock under subchapter B, not a person, under subchapter A. Also, Cockrell's written notice was made pursuant to Section 822.012, which creates lesser criminal penalties for owners who allow dogs dangerous to animals to run at large. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.012. Because Cockrell's notice was not made pursuant to Section 822.0421, subsection 3 was inapplicable.

11

This leaves only subsection 1 of Section 822.042(g), which applies if the dog owner either knows of

> (A) . . . an unprovoked attack on a person that causes bodily injury and occurs in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own; or

> (B) . . . unprovoked acts in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own and those acts cause a person to reasonably believe that the dog will attack and cause bodily injury to that person.

TEX. HEALTH & SAFETY CODE ANN. § 822.041(2)(A)–(B).

## B. The Language of the State's Erroneous Jury Charge

Cockrell complains of the following general instruction submitted to the jury,

> Our law provides that a person commits the offense of attack by dog if the person is the owner of a dog and the person: *with criminal negligence, knows* the dog is a dangerous dog by learning in a manner described by Section 822.042(g) of the Texas Health and Safety Code that the person is the owner of a dangerous dog, and the dangerous dog makes an unprovoked attack on another person that occurs at a location other than a secure enclosure in which the dog is restrained in accordance with 822.041[7] Subchapter D and that causes serious bodily injury, as defined by Section 822.001, or death to the other person.

---

[7]Under Section 822.041,

> "Secure enclosure" means a fenced area or structure that is:
> (A)  locked;
> (B)  capable of preventing the entry of the general public, including children;
> (C)  capable of preventing the escape or release of a dog;
> (D)  clearly marked as containing a dangerous dog; and
> (E)  in conformance with the requirements for enclosures established by the local animal control authority.

TEX. HEALTH & SAFETY CODE ANN. § 822.041(4).

(Emphasis added). Cockrell argues that the general instruction combined the two manners of committing the offense of attack by dog and that the error was repeated in the application portion of the charge, which failed to reference Section 822.042 and instead stated,

> Now, if you find from the evidence beyond a reasonable doubt that on or about September 5, 2022, in Bowie County, Texas, the defendant, Ray Lee Cockrell, the owner of a dog, did then and there with criminal negligence, when the Defendant did then and there know that the dog was dangerous by learning in a manner described by section *822.043(g)* of the Texas Health and Safety Code, to-wit: Defendant knew the dog had made a previous attack and/or Defendant was told by Animal Control Authority that the dog was dangerous, the dog made an unprovoked attack on another person, namely, [Nathan Smith], and said attack occurred at a location other than a secure enclosure in which the dog was restrained in accordance to Subchapter D, Sec. 822.041, et. seq. and said unprovoked attack caused serious bodily injury to [Nathan Smith], then you will find the Defendant Guilty of the Indicted Offense of Attack by Dog . . . .

(Emphasis added). The State concedes error.

## C.     The Harm to Cockrell Was Egregious

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Murrieta*, 578 S.W.3d at 555 (citing *Abdnor*, 871 S.W.2d at 732). When, as here, the defendant "did not object to the charge, we will not reverse [the judgment] unless the record shows the error resulted in egregious harm." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "[T]he record must show that a defendant has suffered actual, rather

13

than merely theoretical, harm from jury instruction error." *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005) (citing *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)).

"In determining whether there has been egregious harm, we consider (a) the jury charge as a whole; (b) the state of the evidence, including contested issues and the weight of probative evidence; (c) arguments of counsel[;] and (d) any other relevant information in the record." *Riley v. State*, 447 S.W.3d 918, 925 (Tex. App.—Texarkana 2014, no pet.) (citing *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006)). Because of the language of the charge, Cockrell argues that he was egregiously harmed since he "was convicted of a crime that is not contained in the statute for attack by dog."

In reviewing the jury charge as a whole, we find it rife with errors. First, including all the elements of the offense is essential to the trial court's duty to accurately "set[] forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. As discussed above, attack by dog can be committed by two manners, both requiring an unprovoked attack causing serious bodily injury or death. TEX. HEALTH & SAFETY CODE ANN. § 822.005(a). Under the first manner, the State must prove that the defendant "with criminal negligence . . . fail[ed] to secure the dog." TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1). But under the application paragraph submitted, the jury was not asked whether Cockrell, with criminal negligence, failed to secure the dog.[8] In fact, the wording in the charge does not describe what act Cockrell

---

[8]The dissent argues that evidence of criminal negligence was sufficient to remove harm even though the jury was not asked to attach the required mental state to the act of failing to secure the dog, which is what Section 822.005(a)(1) expressly requires. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1). Instead, it appears that, because the charge included language that the attack occurred in a place other than a secured enclosure, the dissent argues that the jury must have found that Cockrell failed to secure his dogs with criminal negligence. A plain reading of the

14

committed with criminal negligence.  Because the jury was not asked to find whether Cockrell

acted with criminal negligence in failing to secure the dogs, an essential element of this manner

of committing the offense was omitted.

Under the second manner, knowledge that the dogs were dangerous dogs is required.

TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2).  The trial court instructed the jury that:

> a person learns that the person is the owner of a dangerous dog when:  (1) the owner knows of an attack described in Section 822.041(2)(A) or (B); (2) the owner receives notice that a justice court, county court, or municipal court has found that the dog is a dangerous dog under Section 822.0423; or (3) the owner is informed by the animal control authority that the dog is a dangerous dog under Section 822.0421.

This instruction was problematic as a whole because, as explained above, subsections 2 and 3

simply did not apply.  In *Burnett v. State*, the Texas Court of Criminal Appeals explained that the

jury charge, which sets forth the law applicable to the case, must be "tailored to the facts

presented at trial.  That is, the trial court must submit to the jury only the portions of the statutory

definition[s] . . . that are supported by the evidence.  To do otherwise is error."  *Burnett v. State*,

541 S.W.3d 77, 84 (Tex. Crim. App. 2017) (footnote omitted) (citations omitted).

Here, that error was compounded by the application paragraph, which included

inapplicable theories in the disjunctive and allowed the jury to convict Cockrell on alternative

theories that were simply not supported by the evidence.  Further, the application paragraph

included the following phrase:  "Defendant was told by Animal Control Authority that the dog

was dangerous," which referred to subchapter A, subsection 3 of Section 822.042(g) of the Texas

---

State's charge reveals the flaw in that logic since Cockrell was not accused of committing any act with criminal negligence.

Health and Safety Code, but did not apply because the animal control authority made a dangerous dog determination after an investigation of an attack on livestock under subchapter B, not a person. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.0421(a). Such an instruction in the application paragraph essentially operated as a directed verdict containing a misstatement of the law.[9] Last, the application paragraph failed to contain any requirement of Cockrell's knowledge that his dogs were dangerous dogs under Section 822.042, because it instead referenced Section 822.04*3*, an inapplicable section titled "Registration." *See* TEX. HEALTH & SAFETY CODE ANN. § 822.043. As a result, under the second method of committing attack by dog, the application paragraph's language that "Defendant knew the dog[s] had made a previous attack" failed to require the essential finding under the second method of attack by dog because it did not require the jury to find that Cockrell knew his dogs made a previous attack *on a human*.

To summarize, under the State's charge, the jury could not have convicted Cockrell under the first manner of committing attack by dog because the wording of the charge did not allow the jury to find that Cockrell acted with criminal negligence in failing to secure the dogs. Under the second manner of committing attack by dog, the jury was not asked to find that Cockrell knew of a prior attack on a human. As we have previously stated, "[O]mitting necessary elements of the offense from the jury charge is not harmless" because "such omissions deprive a defendant of his or her right to have a jury determine all of the elements of the offense beyond a reasonable doubt." *Riley*, 447 S.W.3d at 929 (citing *Sanchez*, 209 S.W.3d at 125).

---

[9]The dissent does not dispute this.

16

In reviewing the charge as a whole, the jury could have convicted Cockrell based on (1) a prior attack meeting the requirements of Section 822.041(2), "and/or" (2) an inapplicable section showing that a court had determined Cockrell's dogs were dangerous, "and/or" (3) because he was told by an animal control authority that his dogs were dangerous, without regard to whether the authority told Cockrell that his dogs were dangerous to humans, which was what was required by law. In other words, two out of the three ways the jury could have decided Cockrell's guilt based on the second manner of attack by dog were inapplicable. In our view, this created a jury unanimity issue.[10] Also, because of the application paragraph's wording that asked whether Cockrell "with criminal negligence, . . . did then and there know that the dog was dangerous," it is unclear whether the jury merely found that Cockrell should have known the dogs were dangerous or whether it found that he did know that the dogs were dangerous. As a result, the charge left potential for the jury to convict under the second manner even if it only found criminal negligence, a lesser mens rea than Section 822.005(a)(2) requires.[11]

"It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013)). "A jury charge is fundamentally defective if it authorizes a conviction without requiring the jury to find all the elements of an offense beyond a reasonable doubt." *Sanchez v. State*, 182 S.W.3d 34, 62 (Tex. App.—San Antonio 2005), *aff'd*,

[10]A defendant has a "constitutional and statutory right to a unanimous jury verdict," and violation of that right "cause[s] egregious harm to his right to a fair and impartial trial." *Ngo*, 175 S.W.3d at 752.

[11]We are also mindful that this case was tried in connection with Cockrell's companion case and resulted in a single charge. This means that the State's charge in this case was combined with its charge on an offense that simply does not exist under the law.

209 S.W.3d 117 (Tex. Crim. App. 2006). Here, we find that the state of the jury charge, which contained errors in both the abstract and application paragraphs, failed to require findings on each and every element of attack by dog under either of the two manners for committing that offense. That is especially harmful given "the appellate presumption that the jury is presumed to have understood and followed the court's charge absent evidence to the contrary." *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). That resulted in a "jury charge [that] was so egregious that appellant was harmed by being deprived of a fair and impartial trial." *Sanchez*, 182 S.W.3d at 62; *see Hutch*, 922 S.W.2d at 171 (noting that in "*Ruiz v. State*, 753 S.W.2d 681, 686 (Tex. Crim. App. 1988), the court focused on the charge itself to determine egregious harm"); *Hisey v. State*, 129 S.W.3d 649, 654 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). Though egregious harm is shown by the charge submitted by the State, we also find that the State's arguments weigh in favor of finding egregious harm. The State's theory at trial relied heavily on the fact that Cockrell was given a dangerous dog notification but, as discussed above, the testimony at trial showed that Cockrell never received written notice from an animal control authority that his dogs were dangerous to people. Even so, the State expressly and mistakenly argued that notification to Cockrell that his dogs were dangerous to livestock met the requirements under the second manner of committing attack by dog.[12] Also, in closing, the State argued "[W]ell, in regard to the attack by a dog, the mental element is criminal negligence. You ought to have known," but criminal negligence was not applicable to the second manner of

---

[12]The State argued, "When you are put on notice that you have a dangerous dog in regards to livestock[,] that puts you on notice that you have a dangerous dog period."

18

committing the offense, which required Cockrell's knowledge that the dogs were dangerous. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2).

After reviewing the record, which includes the state of the evidence discussed below, we find that Cockrell was egregiously harmed by jury-charge error. Consequently, we sustain Cockrell's first point of error.

## III.    Legally Sufficient Evidence Supported the Jury's Verdict of Guilt

Cockrell argues that the evidence was legally insufficient to support his conviction. Here, we restrict our review (1) to the first manner by which the offense is committed, which does not require a prior attack on a human, and (2) to subsection 1 of the second manner by which the offense is committed.[13]

### A.    Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve

---

[13]The facts show that the remaining subsections do not apply.

19

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged in its indictment that, on or about September 5, 2022, Cockrell,

> [**Paragraph One**:] . . . the owner of a dog, did then and there with criminal negligence, fail to secure the dog and the dog made an unprovoked attack on another person, namely, [Nathan], and the unprovoked attack occurred at a location other than the Defendant's real property or in or on the Defendant's vehicle or boat, and said unprovoked attack caused <u>serious bodily injury to</u> [Nathan].

> **Paragraph Two**: and it is further presented in and to said Court that the said <u>Ray Lee Cockrell</u>, hereinafter referred to as the Defendant, heretofore on or about <u>September 5, 2022</u>, the Defendant, the owner of a dog, did then and there with criminal negligence, when the <u>Defendant did then and there know that the dog was dangerous by learning in a manner described by Section 822.042(g) of the Texas Health & Safety Code, to-wit:  Defendant knew the dog had made a previous attack and/or Defendant was told by Animal Control Authority that the dog was dangerous</u>, the dog made an unprovoked attack on another person, namely, [Nathan], and said attack occurred at a location other than a secure enclosure in which the dog is restrained in accordance with Subchapter D, Sec.

20

822.041, et. seq. and said unprovoked attack cause[d] serious bodily injury to [Nathan].

**B.      Legally Sufficient Evidence Supported the First Manner Alleged in the State's Indictment**

An indictment can contain more than one manner of committing an offense. TEX. CODE CRIM. PROC. ANN. art. 21.24. "[P]roof of any one 'manner or means' will support a guilty verdict." *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990). We first focus on paragraph one of the State's indictment, which refers to the first method of committing attack by dog. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1).

Under this method, "[f]ailure to secure a dog is the conduct prohibited by the statute." *Watson v. State*, 369 S.W.3d 865, 871 (Tex. Crim. App. 2012). The term "'[s]ecure' means to take steps that a reasonable person would take to ensure a dog remains on the owner's property, including confining the dog in an enclosure that is capable of preventing the escape or release of the dog." *Id.* (quoting TEX. HEALTH & SAFETY CODE ANN. § 822.001(4)). "By referring to 'steps a reasonable person would take,' the statute clearly establishes an objective reasonable-person standard." *Id.* "There is also a reasonable-person element to the *mens rea* required for the offense, criminal negligence, which involves 'a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.'" *Watson v. State*, 369 S.W.3d 865, 871 (Tex. Crim. App. 2012); *see* TEX. PENAL CODE ANN. § 6.03(d).

Here, the jury heard that Cockrell kept a large pack of pit bull and pit bull mixed-breed dogs, and several witnesses testified that the attacking dogs came from Cockrell's property and

belonged to him. Ravin identified which of Cockrell's pit bull dogs had attacked her from photos taken by the BCSO as they were trapping the dogs on Cockrell's property. According to both Nathan and Beth, the same dogs that had attacked Ravin had also attacked Nathan while he was walking in the woods. Viewing this evidence in the light most favorable to the verdict, the evidence established that Cockrell was the owner of the dogs that had made an unprovoked attack outside of his property, causing serious bodily injury to Nathan.

In addition, the State had to show that Cockrell, with criminal negligence, failed to secure the attacking dogs. "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct . . . when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(d).

The evidence at trial showed that Cockrell repeatedly failed to secure his dogs. After they attacked Balding's horses, Cockrell signed a written warning from the BCSO requiring him to restrain the dogs or face criminal charges. Even so, the jury heard that the dogs roamed free, had attacked Poindexter and Ravin, and had aggressively pinned down Hoots and his mother in their vehicle and home. Cockrell claimed that he did not know of those attacks. Yet, the jury could have rejected that claim because Poindexter testified that he witnessed an officer talking to Cockrell after he reported his incident to the BCSO, and Ravin's grandfather testified he told Cockrell, who had found Ravin's ripped clothing, that he needed to get rid of his dogs. The jury could have also determined that Cockrell knew his dogs were aggressive since the evidence established that, before the attack on Nathan, the dogs (1) were not fed properly, (2) attacked

22

livestock, (3) swarmed aggressively around Hadaway's patrol unit while Cockrell was present, and (4) charged at Matlock and Neese, resulting in the shooting of several dogs. Considering that evidence, any rational jury could have found, beyond a reasonable doubt, that Cockrell should have been aware of a substantial and unjustifiable risk that failing to secure his dogs created a circumstance that could result in serious bodily injury to another and that failing to perceive such a risk was a gross deviation from the standard of care.

When viewed in the light most favorable to the jury's verdict, we find (1) that Cockrell was the owner of the dogs, (2) that he was criminally negligent when he failed to secure the dogs, and (3) that the dogs made an unprovoked attack outside of Cockrell's property on Nathan, who suffered serious bodily injury.

### C. Legally Sufficient Evidence Supported Subsection 1 of the Second Manner of Committing the Offense

Under the second manner of committing attack by dog, the evidence demonstrated that Cockrell's dogs made an unprovoked attack on Nathan in a place other than a secure enclosure, leaving only the question of whether Cockrell had knowledge that his dogs were dangerous dogs in a manner described by Section 822.042(g). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 822.005(a)(2), 822.042(g). Under subsection 1 of Section 822.042(g)(1), Cockrell had such knowledge if he knew of an unprovoked attack outside of a secure enclosure by his dogs on another person, which caused bodily injury to that person. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 822.041(2)(A), 822.042(g)(1).

23

"Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Paroline v. State*, 532 S.W.3d 491, 498 (Tex. App.—Texarkana 2017, pet. struck) (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015)). Here, we find that Cockrell's knowledge that his dogs were dangerous was established by circumstantial evidence.

The evidence showed that Cockrell was aware that his dogs were dangerous to livestock and could escape his fence before their attack on Ravin, who was attacked by Cockrell's dogs while walking in the street. The dogs ripped off her clothes and inflicted serious bodily injury on her. Ravin's grandfather testified that he found Ravin "stripped nude" during the attack and said that "[Cockrell] knew what happened" because he came "out and picked up her clothes." Although there was no direct evidence of the state of Ravin's clothing, Ravin's testimony and photos of Ravin's severe injuries could have led the jury to infer that the clothes were ripped, tattered, and bloodied. Ravin's grandfather also told Cockrell that his dogs "needed to go." From that evidence, a rational jury could conclude beyond a reasonable doubt that, before Nathan's attack, Cockrell knew of the unprovoked attack by his dogs on Ravin and was aware that the attack caused bodily injury to her.

Even though Cockrell denied knowledge of prior attacks on humans by his dogs, the jury could have rejected his testimony after determining that he purposefully ignored any suggestion that his dogs were dangerous. Poindexter testified that he notified the BCSO about his attack and watched as a deputy spoke to Cockrell. Hoots testified that Cockrell's dogs had cornered his mother and him. The jury also heard deputies testify that they spoke with Cockrell about his

24

dogs after complaints from Hoots. While in Cockrell's presence, Matlock shot aggressive dogs that charged at Neese. Even Tyree testified that Cockrell knew he had a dog that nipped at her when she visited.

Because we find the evidence legally sufficient to support the jury's verdict of guilt, we overrule this point of error.

## IV.     Conclusion

We find that the State's jury charge egregiously harmed Cockrell. We reverse the trial court's judgment and remand the matter for a new trial.


Charles van Cleef
Justice


DISSENTING OPINION

What did Cockrell do wrong? He failed to keep his dogs penned up. What happened as a result? A child was seriously injured. Was this criminal negligence? Yes.

At core, that is what the jury found.

For that reason, I would affirm the trial court's judgment on the jury's verdict, though not without hesitation. I share my colleagues' concerns about the charge given to the jury. However, as much as the sorry state of the jury charge weighs in favor of finding egregious harm, I find that the evidence of Cockrell's sorry behavior weighs, even more, against egregious harm.

In order to convict on the charge as given, the jury had to find that a dog owned by Cockrell "made an unprovoked attack" and that "said attack occurred at a location other than a secure enclosure." Those are the key points on which I base my dissent.

To get to those key points, the jury had to navigate the muddle of a charge given to them. The offense is attack by dog under Section 822.005 of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 822.005. The statute itself spells out the two ways of committing the offense.[14] The Texas Court of Criminal Appeals has spelled out what is required to prove the offense under the first way.[15] This Court has spelled out what is required to prove the offense the second way.[16] Each way comes with a statutory definition of the level of penning up dogs that is required.[17]

---

[14] *See* TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1)–(2) (subsections (a)(1) "or" (a)(2)).

[15] *Watson*, 369 S.W.3d at 870–71 (discussing Section 822.005(a)(1) criminal negligence).

[16] *State v. Taylor*, 322 S.W.3d 722, 729 (Tex. App.—Texarkana 2010, pet. ref'd). We held that Section 822.005(a)(2) "requires knowledge on the part of the owner that his or her dog is dangerous by learning that the dog is dangerous in a manner described in Section 822.042(g)." *Id.* We held that the knowledge requirement set by Section 822.005(a)(2) meant that a Section 822.005(a)(2) conviction must be based on the culpable mental state (mens rea) of intent, knowledge, or recklessness. *Id.* at 730. As part of assessing what mens rea was required by Section 822.005(a)(2), we followed the directive of the Texas Court of Criminal Appeals to consider a number of factors, among them the difficulty prosecutors might face in proving the mental state. *Id.* at 729 (citing *Aguirre v. State*, 22 S.W.3d 463, 476 (Tex. Crim. App. 1999)). We stated that, if a prosecutor brought a Section 822.005(a)(2) case *by tracking the requirements of Section 822.042(g)*, we anticipated that

> a prosecutor would likely encounter little difficulty in proving that the owner of a dangerous dog who makes an unprovoked attack on another person, at a location other than a secure enclosure in which the dog is restrained, failed to restrain the dangerous dog in a reckless, knowing, or intentional manner.

*Id.*

[17] Section 822.005(a)(1) requires the owner to "secure" the dog(s), TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1), which, by Section 822.001(4), "means to take steps that a reasonable person would take to ensure a dog remains on the owner's property, including confining the dog in an enclosure that is capable of preventing the

26

As my colleagues point out, the charge as actually given permitted confusion over both the mental state and the prohibited conduct required by the two ways of proving the crime.

First, the charge is a "mish-mash" of mens rea. Did the jury convict Cockrell because they found he was criminally negligent as required by Section 822.005(a)(1) and *Watson* or because they found he had acted recklessly, knowingly, or intentionally as required by Section 822.005(a)(2) and *Taylor*? It is impossible to know for sure. But, at a minimum, in my view, the jury found criminal negligence. *See Gonzalez v. State*, 610 S.W.3d 22, 29 (Tex. Crim. App. 2020).[18]

Second, did the jury convict because they found that Cockrell failed to take "reasonable steps" to "*secure*" his dogs as required by Section 822.005(a)(1) and Section 822.001(4), or did the jury find that Cockrell failed to keep his dogs in a Section 822.005(a)(2) "*secure enclosure*"

---

escape or release of the dog," TEX. HEALTH & SAFETY CODE ANN. § 822.001(4). Section 822.005(a)(2) imposes criminal liability when the attack occurs outside of "a secure enclosure in which the dog is restrained," TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(2), a term which is defined by Section 822.041(4) to mean:

> [A] fenced area or structure that is:
>
> (A)     locked;
> (B)     capable of preventing the entry of the general public, including children;
> (C)     capable of preventing the escape or release of a dog;
> (D)     clearly marked as containing a dangerous dog; and
> (E)     in conformance with the requirements for enclosures established by the local animal control authority.

TEX. HEALTH & SAFETY CODE ANN. § 822.041(4).

[18]Holding that,

> because proof of a greater culpable mental state necessarily constitutes proof of the lesser culpable mental state, the jury's guilty verdict indicates that it was *at least* unanimous about Appellant's recklessness and could have convicted him on that basis regardless of whether it was split on the intentional/knowing culpable mental states.

*Gonzalez*, 610 S.W.3d at 29.

that met all the requirements of Section 822.041(4)? *See* TEX. HEALTH & SAFETY CODE ANN. §§ 822.001(4), 822.041(4). This, in my view, *is* possible to know. To me, the evidence is overwhelming that Cockrell did not keep his dogs, to use a layman's term, penned. Therefore, for me, under the egregious harm standard, there is no need to parse the differences between the legal standards of "secure[d]" and in a "secure enclosure." Cockrell did not meet either standard. His conduct fell below both standards.

Speaking of the first way to prove the crime, Section 822.005(a)(1), the Texas Court of Criminal Appeals has said, "[T]he elements of the prohibited conduct are clearly defined: a mens rea of criminal negligence, and the actus reus of failing to secure a dog." *Watson*, 369 S.W.3d at 871.

The charge was, admittedly, a morass. But the required elements for Section 822.005(a)(1) are in there:

> Now, if you find from the evidence beyond a reasonable doubt that on or about September 5, 2022, in Bowie County, Texas, the defendant, Ray Lee Cockrell, the owner of a dog, did then and there *with criminal negligence*, when the Defendant did then and there know that the dog was dangerous by learning in a manner described by section *822.043(g)* of the Texas Health and Safety Code, to-wit: Defendant knew the dog had made a previous attack and/or Defendant was told by Animal Control Authority that the dog was dangerous, the dog made an unprovoked attack on another person, namely, [Nathan Smith], and said attack occurred at a location *other than a secure enclosure* in which the dog was restrained in accordance to Subchapter D, Sec. 822.041, et. seq. and said unprovoked attack caused serious bodily injury to [Nathan Smith], then you will find the Defendant Guilty of the Indicted Offense of Attack by Dog . . . .

(Emphasis added).

28

The majority rightly points out that criminal negligence is not grammatically attached to any particular act or omission by Cockrell. But the majority is also correct to point out that, when arguing the case, the State asked the jury to convict Cockrell based on a mens rea of criminal negligence. As for what Cockrell did wrong, the State urged time and again that Cockrell should have kept his dogs penned. "His duty was to confine those dogs and make sure they quit terrorizing the neighborhood." "He didn't keep them in an enclosure." "[Y]ou have the duty to keep that dog in your yard from attacking other people." Thus, the State did *not* explicitly draw the jury's attention away from Cockrell's duty to keep the dogs penned. *See French v. State*, 563 S.W.3d 228, 236 (Tex. Crim. App. 2018). Instead, in my view, the State's arguments would have focused the jury on the words "secure enclosure" as found in the charge. I view this as an instance where "the jury arguments undoubtedly helped to remedy the alleged error in the charge." *Campbell v. State*, 664 S.W.3d 240, 253 (Tex. Crim. App. 2022). I believe that the jury understood what Cockrell did wrong and why it was wrong.

True, the charge used "secure enclosure" instead of "secure." It would be difficult to conceive of a circumstance where "secure" would require more than "secure enclosure." In other words, "secure enclosure" appears to be the more onerous standard. This, though, is not the case to examine the outer limits of those respective definitions. Cockrell met neither standard. Hence, any theoretical distinction would be a distinction without a difference on these facts. Under the charge as given, the jury could convict Cockrell of criminal negligence for failing to secure his dogs.

29

I, therefore, agree with the majority's statement that "the charge left potential for the jury to convict under the second manner even if it only found criminal negligence, a lesser mens rea than Section 822.005(a)(2) requires." I also agree with the majority's view that the charge as given permits the jury to import the criminal negligence mens rea of Section 822.005(a)(1) into Section 822.005(a)(2), even though Section 822.005(a)(2) requires the higher mens rea of knowingly, recklessly, or intentionally.

But, to me, that does not matter. Section 822.005(a)(2) was only one way of proving Cockrell committed the crime of attack by dog. The other way was Section 822.005(a)(1). Under Section 822.005(a)(1), "[w]hat matters is that [the defendants in *Watson*] failed to secure the dogs and, as a result of the failure to secure the dogs, the dogs were off [the defendants'] property when they fatally attacked [the victim]." *Watson*, 369 S.W.3d at 871.

The charge, for all of its faults, contains what *Watson* required: "a mens rea of criminal negligence, and the actus reus of failing to secure a dog." *Id.* Therefore, while the charge misstated the elements of the crime,[19] I do not see this as a case where the charge *omitted* the Section 822.005(a)(1) *Watson* elements entirely.

The charge, though a mess, contained the elements required under Section 822.005(a)(1). The State's argument drew the jury's attention to what is required by Section 822.005(a)(1). The evidence was overwhelming. Cockrell failed to keep his dogs penned up. As a result, a child was seriously injured. Cockrell's repeated refusals to keep his dogs penned, at a minimum, constituted criminal negligence.

---

[19]It did so by using "secure enclosure" for "secure" and by using all of the garbled Section 822.005(a)(2) language that is unnecessary for Section 822.005(a)(1).

30

Therefore, on balance, I come down on the side of there being no egregious harm.

I would find charge error, but would affirm the judgment of conviction.


Jeff Rambin
Justice

Date Submitted:     June 12, 2024
Date Decided:       August 8, 2024

Do Not Publish